UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - X

United States of America,                              <u>COMPLAINT</u>

                                Plaintiff,                    Civil Action No.

          - against -

Great American Auction Service, Inc.,
Peter Francese
                          Defendants

- - - - - - - - - - - - - - - - - - - - - - - - - - - X

The plaintiff herein, by its attorney MANFREDI LAW GROUP, PLLC, complains of the

defendants above named, for its cause of action, and alleges:

1. Jurisdiction is conferred upon this Court pursuant to Title 28, United States Code, Section

   1345.

2. On information and belief, the Defendant Great American Auction Service, Inc. is an active,

   domestic corporation, organized in New York under DOS ID # 1709962 with offices at 631

   Albany Post Road, Hyde Park, New York 12538 within the Southern District of New York.

3. On information and belief, the Defendant Peter Francese resides within the Southern District

   of New York at 128 Cardinal Road, Hyde Park, New York 12538.

4. This lawsuit is filed for a sum certain due the Plaintiff, to recover monies owed by the

   Defendants to the Plaintiff based on their default of a commercial loan.

<u>THE SBA LOAN</u>

5. That on or about May 21, 2012 the U.S. Small Business Administration (hereinafter "SBA")

   authorized and guaranteed a loan for the sum of $50,000.00 to the borrower-defendant Great

   American Auction Service, Inc.

6. In accordance with said SBA Authorization, lender Rhinebeck Bank entered into a Promissory Note (hereinafter "Note") with Great American Auction Service, Inc. for the principal amount of $50,000.00.

7. A copy of the Note with SBA loan authorization is attached herein and incorporated by reference as <u>Exhibit A.</u>

8. As collateral for the payment of the Note indebtedness due, Peter Francese duly acknowledged and delivered a personal Guaranty of performance of said indebtedness. <u>Exhibit B.</u>

9. Great American Auction Service, Inc. defaulted under the terms of the Note for failure to make payment due on March 1, 2014 ("the default").

10. Peter Francese defaulted under his obligations as guarantor for failure to make payment due on March 1, 2014 ("the default").

11. The Note principal balance due is $49,364.86.

12. The Plaintiff is entitled to recover the full balance due under the Note, plus fees and accrued interest at the Note rate of 5.25% per annum, as itemized in the Certificate of Indebtedness issued by the United States Department of Treasury Bureau of Fiscal Service, acting on behalf of the SBA, attached and incorporated herein by reference as <u>Exhibit C</u>.

13. The Note has not been otherwise amended or modified.

14. As a result of aforesaid default, the Defendants are liable to the Plaintiff, jointly and severally, for the sum certain balance set forth in the Certificate of Indebtedness in the amount of $73,362.86 due as of February 20, 2020, plus additional interest accruing at the rate of 5.25% per annum on the loan balance from February 21, 2020 to the date of judgment entry. <u>Exhibit D.</u>

15. Plaintiff is not seeking attorneys' fees.

16. No part of the aforesaid sum has paid, although duly demanded.

WHEREFORE, the United States demands judgment against defendants, jointly

and severally, as follows:

1.    In the amount of $73,362.86; plus

2.    Pre-judgment interest at the rate of 5.25%, from February 21, 2020 through the date

of entry of judgment on the amount set forth in subparagraph 1, above, and

3.    Post-judgment interest, pursuant to 28 U.S.C. ' 1961 at the legal rate then in effect,

from the date of entry of judgment until the judgment is paid in full;

4.    Administrative costs of suit; and

5.    Such other relief as this Court may deem just and proper.

Dated:  New York, New York
        February 21, 2020

Respectfully submitted,

BY: */s/ John S. Manfredi*
John S. Manfredi
ATTORNEY FOR THE UNITED STATES OF
AMERICA
Manfredi Law Group, PLLC
302 East 19th St. Suite 2A
New York, New York 10003
PH: 347 614 7006
Fax 347 332 1740

Exhibit A

1600230660B

*LN#4120521 2*

U.S. Small Business Administration

**AUTHORIZATION**
**(SBA*Express* LOAN)**



SBA - Loan Authorization

SBA Loan# 52137750-06
U.S. Small Business Administration
**Little Rock Commercial Loan Servicing Center**
**Office of Financial Program Operations**
**2120 Riverfront Drive**
**Little Rock, AR 72202**

Lender:
**Rhinebeck Bank**
**2 Jefferson Plaza**
**Poughkeepsie, NY 12601**

Lender is issuing this SBAExpress Authorization for SBA to guarantee **50.000%** of a loan in the amount of **$50,000.00** to be made by Lender to assist:

Borrower:   **Great American Auction Service, Inc.**
            **4390 Albany Post Road, Hyde Park, NY 12538**

Lender's issuance is in accordance with the SBAExpress Supplemental Loan Guaranty Agreement between Lender and SBA for a SBAExpress Loan.

This Authorization is subject to the application submitted by Borrower and the following terms and conditions:

1. Lender must comply with current SBA Form 750, and the provisions of the Small Business Act, 15 U.S.C. § 631, et. seq., SBA regulations, SBA Standard Operating Procedures, SBA Official Notices, the SBAExpress Program Guide, and the SBAExpress Supplemental Loan Guaranty Agreement between Lender and SBA, all of which may be amended from time to time.

2. Lender must make first disbursement of the loan no later than 84 months, and complete disbursement no later than 84 months, from the date of this Authorization. For a revolving line of credit loan, Lender must make no disbursement of this loan beyond the maturity date.

3. For loans with a maturity of more than 12 months, Lender must pay a guaranty fee of 2% of the amount guaranteed for loans of $150,000 or less (Lender may retain no more than 25% of this fee) and 3% for loans of more than $150,000 to the Small Business Administration, Denver, CO 80259-0001, within 90 days of the date of this Authorization.   For loans with a maturity of 12 months or less, Lender must pay a guaranty fee of .25% of the amount guaranteed to the same address within 10 days after SBA issued the SBA Loan Number.  The guaranty fee for this loan is **$375.00.**

4. Lender must have Borrower execute a Note containing the following repayment terms:
**Borrower will pay this loan in accordance with the following payment schedule:  Seven (7) Year Revolving Line of Credit, subject to annual renewals.**

**Borrower will pay this loan in one payment of all outstanding principal plus all accrued unpaid interest seven (7) years from the date of the Note. In addition, Borrower will pay regular payments of all accrued unpaid interest due as of each payment date, beginning the first (1st) day of each month, with all subsequent interest payments to be due on the same day of each month after that.**

5.  Lender must develop and maintain evidence of a system or process to reasonably ensure that proceeds of loan were used for the following eligible business purposes:

| | |
|---|---|
| **Working Capital** | **$50,000.00** |
| **Total Loan Requested** | **$50,000.00** |

6.  Lender must satisfy the following collateral conditions:

**UCC**        **All Inventory, Chattel Paper, Accounts, Equipment and General Intangibles**

**Guaranty**    **Mary Jo Garlo, Individual, Guaranty Amount: Unlimited**

**Guaranty**    **Peter Francese, Individual, Guaranty Amount: Unlimited**


LENDER

By: _____        _____
    (Authorized Signature)              (Date)

James T. McCardle III, Chief Lending Officer

*0000000000412052120956052120120*

# PROMISSORY NOTE

| Principal $50,000.00 | Loan Date 05-21-2012 | Maturity 05-21-2019 | Loan No 41205212 | Call / Coll 4A / ALL | Account *** | Officer 303 | Initials |
|---|---|---|---|---|---|---|---|

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item.
Any item above containing "****" has been omitted due to text length limitations.

**Borrower:** Great American Auction Service, Inc.
4390 Albany Post Rd
Hyde Park, NY 12538-3610

**Lender:** Rhinebeck Bank
Hyde Park Branch
1075 Violet Avenue
Hyde Park, NY 12538

---

**Principal Amount: $50,000.00**        **Initial Rate: 5.250%**        **Date of Note: May 21, 2012**

**PROMISE TO PAY.** To repay Borrower's loan, Great American Auction Service, Inc. ("Borrower") promises to pay to Rhinebeck Bank ("Lender"), or order, in lawful money of the United States of America, the principal amount of Fifty Thousand & 00/100 Dollars ($50,000.00) or so much as may be outstanding, together with interest on the unpaid outstanding principal balance of each advance. Interest shall be calculated from the date of each advance until repayment of each advance.

**PAYMENT.** Borrower will pay this loan in accordance with the following payment schedule:

Seven (7) Year Revolving Line of Credit, subject to annual renewals.

Borrower will pay this loan in one payment of all outstanding principal plus all accrued unpaid interest seven (7) years from the date of the Note. In addition, Borrower will pay regular payments of all accrued unpaid interest due as of each payment date, beginning the first (1st) day of each month, with all subsequent interest payments to be due on the same day of each month after that.

Unless otherwise agreed or required by applicable law, payments will be applied first to any accrued unpaid interest; then to principal; then to any late charges; and then to any unpaid collection costs. Borrower will pay Lender at Lender's address shown above or at such other place as Lender may designate in writing.

**VARIABLE INTEREST RATE.** The interest rate on this Note is subject to change from time to time based on changes in an independent index which is the highest published Wall Street Journal Prime Rate (the "Index"). The Index is not necessarily the lowest rate charged by Lender on its loans. If the Index becomes unavailable during the term of this loan, Lender may designate a substitute index after notifying Borrower. Lender will tell Borrower the current index rate upon Borrower's request. The interest rate change will not occur more often than each day. Borrower understands that Lender may make loans based on other rates as well. The Index currently is 3.250% per annum. Interest on the unpaid principal balance of this Note will be calculated as described in the "INTEREST CALCULATION METHOD" paragraph using a rate of 2.000 percentage points over the Index, adjusted if necessary for any minimum and maximum rate limitations described below, resulting in an initial rate of 5.250% per annum. NOTICE: Under no circumstances will the interest rate on this Note be less than 4.250% per annum or more than the maximum rate allowed by applicable law.

**INTEREST CALCULATION METHOD.** Interest on this Note is computed on a 365/365 simple interest basis; that is, by applying the ratio of the interest rate over the number of days in a year, multiplied by the outstanding principal balance, multiplied by the actual number of days the principal balance is outstanding. All interest payable under this Note is computed using this method.

**PREPAYMENT.** Borrower agrees that all loan fees and other prepaid finance charges are earned fully as of the date of the loan and will not be subject to refund upon early payment (whether voluntary or as a result of default), except as otherwise required by law. Except for the foregoing, Borrower may pay without penalty all or a portion of the amount owed earlier than it is due. Early payments will not, unless agreed to by Lender in writing, relieve Borrower of Borrower's obligation to continue to make payments of accrued unpaid interest. Rather, early payments will reduce the principal balance due. Borrower agrees not to send Lender payments marked "paid in full", "without recourse", or similar language. If Borrower sends such a payment, Lender may accept it without losing any of Lender's rights under this Note, and Borrower will remain obligated to pay any further amount owed to Lender. All written communications concerning disputed amounts, including any check or other payment instrument that indicates that the payment constitutes "payment in full" of the amount owed or that is tendered with other conditions or limitations or as full satisfaction of a disputed amount must be mailed or delivered to: Rhinebeck Bank, 2 Jefferson Plaza Poughkeepsie, NY 12601.

**LATE CHARGE.** If a payment is 10 days or more late, Borrower will be charged 5.000% of the regularly scheduled payment or $25.00, whichever is greater.

**INTEREST AFTER DEFAULT.** Upon default, including failure to pay upon final maturity, the interest rate on this Note shall be increased by adding an additional 3.000 percentage point margin ("Default Rate Margin"). The Default Rate Margin shall also apply to each succeeding interest rate change that would have applied had there been no default. However, in no event will the interest rate exceed the maximum interest rate limitations under applicable law.

**DEFAULT.** Each of the following shall constitute an event of default ("Event of Default") under this Note:

**Payment Default.** Borrower fails to make any payment when due under this Note.

**Other Defaults.** Borrower fails to comply with or to perform any other term, obligation, covenant or condition contained in this Note or in any of the related documents or to comply with or to perform any term, obligation, covenant or condition contained in any other agreement between Lender and Borrower.

**Default in Favor of Third Parties.** Borrower or any Grantor defaults under any loan, extension of credit, security agreement, purchase or sales agreement, or any other agreement, in favor of any other creditor or person that may materially affect any of Borrower's property or Borrower's ability to repay this Note or perform Borrower's obligations under this Note or any of the related documents.

**False Statements.** Any warranty, representation or statement made or furnished to Lender by Borrower or on Borrower's behalf under this Note or the related documents is false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any time thereafter.

**Insolvency.** The dissolution or termination of Borrower's existence as a going business, the insolvency of Borrower, the appointment of a receiver for any part of Borrower's property, any assignment for the benefit of creditors, any type of creditor workout, or the

**PROMISSORY NOTE**
**(Continued)**

Loan No: 41205212

Page 2

commencement of any proceeding under any bankruptcy or insolvency laws by or against Borrower.

**Creditor or Forfeiture Proceedings.** Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Borrower or by any governmental agency against any collateral securing the loan. This includes a garnishment of any of Borrower's accounts, including deposit accounts, with Lender. However, this Event of Default shall not apply if there is a good faith dispute by Borrower as to the validity or reasonableness of the claim which is the basis of the creditor or forfeiture proceeding and if Borrower gives Lender written notice of the creditor or forfeiture proceeding and deposits with Lender monies or a surety bond for the creditor or forfeiture proceeding, in an amount determined by Lender, in its sole discretion, as being an adequate reserve or bond for the dispute.

**Events Affecting Guarantor.** Any of the preceding events occurs with respect to any Guarantor of any of the Indebtedness or any Guarantor dies or becomes incompetent, or revokes or disputes the validity of, or liability under, any guaranty of the Indebtedness evidenced by this Note.

**Change in Ownership.** Any change in ownership of twenty-five percent (25%) or more of the common stock of Borrower.

**Adverse Change.** A material adverse change occurs in Borrower's financial condition, or Lender believes the prospect of payment or performance of this Note is impaired.

**Cure Provisions.** If any default, other than a default in payment, is curable and if Borrower has not been given a notice of a breach of the same provision of this Note within the preceding twelve (12) months, it may be cured if Borrower, after Lender sends written notice to Borrower demanding cure of such default: (1) cures the default within fifteen (15) days; or (2) if the cure requires more than fifteen (15) days, immediately initiates steps which Lender deems in Lender's sole discretion to be sufficient to cure the default and thereafter continues and completes all reasonable and necessary steps sufficient to produce compliance as soon as reasonably practical.

**LENDER'S RIGHTS.** Upon default, Lender may declare the entire unpaid principal balance under this Note and all accrued unpaid interest immediately due, and then Borrower will pay that amount.

**ATTORNEYS' FEES; EXPENSES.** Borrower agrees to pay all costs and expenses Lender incurs to collect this Note. This includes, subject to any limits under applicable law, Lender's reasonable attorneys' fees and Lender's legal expenses whether or not there is a lawsuit, including reasonable attorneys' fees and expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), and appeals. If not prohibited by applicable law, Borrower also will pay any court costs, in addition to all other sums provided by law.

**GOVERNING LAW.** This Note will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of New York without regard to its conflicts of law provisions. This Note has been accepted by Lender in the State of New York.

**CHOICE OF VENUE.** If there is a lawsuit, Borrower agrees upon Lender's request to submit to the jurisdiction of the courts of Dutchess County, State of New York.

**RIGHT OF SETOFF.** To the extent permitted by applicable law, Lender reserves a right of setoff in all Borrower's accounts with Lender (whether checking, savings, or some other account and whether evidenced by a certificate of deposit). This includes all accounts Borrower holds jointly with someone else and all accounts Borrower may open in the future. However, this does not include any IRA or Keogh accounts, or any trust accounts for which setoff would be prohibited by law. Borrower authorizes Lender, to the extent permitted by applicable law, to charge or setoff all sums owing on the indebtedness against any and all such accounts, and, at Lender's option, to administratively freeze all such accounts to allow Lender to protect Lender's charge and setoff rights provided in this paragraph.

**COLLATERAL.** Borrower acknowledges this Note is secured by the following collateral described in the security instrument listed herein: All inventory, chattel paper, accounts, equipment and general intangibles described in a Commercial Security Agreement dated May 21, 2012. If there is any inconsistency between the terms and conditions of this Note and the terms and conditions of the collateral documents, the terms and conditions of this Note shall prevail.

**LINE OF CREDIT.** This Note evidences a revolving line of credit. Advances under this Note may be requested either orally or in writing by Borrower or as provided in this paragraph. Lender may, but need not, require that all oral requests be confirmed in writing. All communications, instructions, or directions by telephone or otherwise to Lender are to be directed to Lender's office shown above. The following person or persons are authorized, except as provided in this paragraph, to request advances and authorize payments under the line of credit until Lender receives from Borrower, at Lender's address shown above, written notice of revocation of such authority: Mary Jo Gario, President of Great American Auction Service, Inc.; and Peter Frances, Vice President of Great American Auction Service, Inc. Not to exceed loan amount. Borrower agrees to be liable for all sums either: (A) advanced in accordance with the instructions of an authorized person or (B) credited to any of Borrower's accounts with Lender. The unpaid principal balance owing on this Note at any time may be evidenced by endorsements on this Note or by Lender's internal records, including daily computer print-outs.

**LOAN EXTENSION.**
Both parties may by mutual written agreement extend the term of the loan for a further period or periods of time as may be agreed upon.

**ANNUAL CLEAN-UP.**
Notwithstanding anything to the contrary in this Agreement, the Borrower agrees that for a period of thirty (30) consecutive days during the term of this loan there shall be no principal balance outstanding under this Agreement. The borrower agrees to this covenant as evidence of its use for short-term business needs.

**ADVANCE REQUESTS.**
Advance requests under this Line of Credit may be made by calling the Bank's Customer Service Center at 845-454-8555, opt. 3 (local) or 1-800-772-8780, opt. 3 (non-local).

**SUCCESSOR INTERESTS.** The terms of this Note shall be binding upon Borrower, and upon Borrower's heirs, personal representatives, successors and assigns, and shall inure to the benefit of Lender and its successors and assigns.

**NOTIFY US OF INACCURATE INFORMATION WE REPORT TO CONSUMER REPORTING AGENCIES.** Borrower may notify Lender if Lender reports any inaccurate information about Borrower's account(s) to a consumer reporting agency. Borrower's written notice describing the specific inaccuracy(ies) should be sent to Lender at the following address: Rhinebeck Bank, 2 Jefferson Plaza Poughkeepsie, NY 12601.

**GENERAL PROVISIONS.** If any part of this Note cannot be enforced, this fact will not affect the rest of the Note. Lender may delay or forgo enforcing any of its rights or remedies under this Note without losing them. Borrower and any other person who signs, guarantees or endorses this Note, to the extent allowed by law, waive presentment, demand for payment, and notice of dishonor. Upon any change in the terms of this Note, and unless otherwise expressly stated in writing, no party who signs this Note, whether as maker, guarantor, accommodation maker or endorser, shall be released from liability. All such parties agree that Lender may renew or extend (repeatedly and for any length of time) this loan or release any party or guarantor or collateral; or impair, fail to realize upon or perfect Lender's security interest in the collateral; and take any other action deemed necessary by Lender without the consent of or notice to anyone. All such parties also agree that Lender may modify

**PROMISSORY NOTE**
**(Continued)**

Loan No: 41205212                                                                 Page 3

this loan without the consent of or notice to anyone other than the party with whom the modification is made.  The obligations under this Note are joint and several.

PRIOR TO SIGNING THIS NOTE, BORROWER READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS NOTE, INCLUDING THE VARIABLE INTEREST RATE PROVISIONS.  BORROWER AGREES TO THE TERMS OF THE NOTE.

BORROWER ACKNOWLEDGES RECEIPT OF A COMPLETED COPY OF THIS PROMISSORY NOTE.

BORROWER:

GREAT AMERICAN AUCTION SERVICE, INC.

By: _____          By: _____
Mary Jo Garlo, President of Great American Auction          Peter Francese, Vice President of Great American
Service, Inc.                                                Auction Service, Inc.

LASER PRO Lending, Ver. 5.50.00.006  Copr. Harland Financial Solutions, Inc. 1997, 2012  All Rights Reserved.  - NY  L:\CFI\LPL\D20.FC  TR 13488  PR-42

Exhibit B

Commercial Guarantee

# COMMERCIAL GUARANTY

| Principal | Loan Date | Maturity | Loan No | Call / Coll | | |
|---|---|---|---|---|---|---|
| | | | | 4A / ALL | | 303 |

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item. Any item above containing "****" has been omitted due to text length limitations.

**Borrower:** Great American Auction Service, Inc.
4390 Albany Post Rd
Hyde Park, NY 12538-3610

**Lender:** Rhinebeck Bank
Hyde Park Branch
1075 Violet Avenue
Hyde Park, NY 12538

**Guarantor:** Peter Francese
124 Cardinal Rd
Hyde Park, NY 12538-2842

**CONTINUING GUARANTEE OF PAYMENT AND PERFORMANCE.** For good and valuable consideration, Guarantor absolutely and unconditionally guarantees full and punctual payment and satisfaction of the Indebtedness of Borrower to Lender, and the performance and discharge of all Borrower's obligations under the Note and the Related Documents. This is a guaranty of payment and performance and not of collection, so Lender can enforce this Guaranty against Guarantor even when Lender has not exhausted Lender's remedies against anyone else obligated to pay the Indebtedness or against any collateral securing the Indebtedness, this Guaranty or any other guaranty of the Indebtedness. Guarantor will make any payments to Lender or its order, on demand, in legal tender of the United States of America, in same-day funds, without set-off or deduction or counterclaim, and will otherwise perform Borrower's obligations under the Note and Related Documents. Under this Guaranty, Guarantor's liability is unlimited and Guarantor's obligations are continuing.

**INDEBTEDNESS.** The word "Indebtedness" as used in this Guaranty means all of the principal amount outstanding from time to time and at any one or more times, accrued unpaid interest thereon and all collection costs and legal expenses related thereto permitted by law, reasonable attorneys' fees, arising from any and all debts, liabilities and obligations of every nature or form, now existing or hereafter arising or acquired, that Borrower individually or collectively or interchangeably with others, owes or will owe Lender. "Indebtedness" includes, without limitation, loans, advances, debts, overdraft indebtedness, credit card indebtedness, lease obligations, liabilities and obligations under any interest rate protection agreements or foreign currency exchange agreements or commodity price protection agreements, other obligations, and liabilities of Borrower, and any present or future judgments against Borrower, future advances, loans or transactions that renew, extend, modify, refinance, consolidate or substitute these debts, liabilities and obligations whether: voluntarily or involuntarily incurred; due or to become due by their terms or acceleration; absolute or contingent; liquidated or unliquidated; determined or undetermined; direct or indirect; primary or secondary in nature or arising from a guaranty or surety; secured or unsecured; joint or several or joint and several; evidenced by a negotiable or non-negotiable instrument or writing; originated by Lender or another or others; barred or unenforceable against Borrower for any reason whatsoever; for any transactions that may be voidable for any reason (such as infancy, insanity, ultra vires or otherwise); and originated then reduced or extinguished and then afterwards increased or reinstated.

If Lender presently holds one or more guaranties, or hereafter receives additional guaranties from Guarantor, Lender's rights under all guaranties shall be cumulative. This Guaranty shall not (unless specifically provided below to the contrary) affect or invalidate any such other guaranties. Guarantor's liability will be Guarantor's aggregate liability under the terms of this Guaranty and any such other unterminated guaranties.

**CONTINUING GUARANTY.** THIS IS A "CONTINUING GUARANTY" UNDER WHICH GUARANTOR AGREES TO GUARANTEE THE FULL AND PUNCTUAL PAYMENT, PERFORMANCE AND SATISFACTION OF THE INDEBTEDNESS OF BORROWER TO LENDER, NOW EXISTING OR HEREAFTER ARISING OR ACQUIRED, ON AN OPEN AND CONTINUING BASIS. ACCORDINGLY, ANY PAYMENTS MADE ON THE INDEBTEDNESS WILL NOT DISCHARGE OR DIMINISH GUARANTOR'S OBLIGATIONS AND LIABILITY UNDER THIS GUARANTY FOR ANY REMAINING AND SUCCEEDING INDEBTEDNESS EVEN WHEN ALL OR PART OF THE OUTSTANDING INDEBTEDNESS MAY BE A ZERO BALANCE FROM TIME TO TIME.

**DURATION OF GUARANTY.** This Guaranty will take effect when received by Lender without the necessity of any acceptance by Lender, or any notice to Guarantor or to Borrower, and will continue in full force until all the Indebtedness incurred or contracted before receipt by Lender of any notice of revocation shall have been fully and finally paid and satisfied and all of Guarantor's other obligations under this Guaranty shall have been performed in full. If Guarantor elects to revoke this Guaranty, Guarantor may only do so in writing. Guarantor's written notice of revocation must be mailed to Lender, by certified mail, at Lender's address listed above or such other place as Lender may designate in writing. Written revocation of this Guaranty will apply only to new Indebtedness created after actual receipt by Lender of Guarantor's written revocation. For this purpose and without limitation, the term "new Indebtedness" does not include the Indebtedness which at the time of notice of revocation is contingent, unliquidated, undetermined or not due and which later becomes absolute, liquidated, determined or due. For this purpose and without limitation, "new Indebtedness" does not include all or part of the Indebtedness that is: incurred by Borrower prior to revocation; incurred under a commitment that became binding before revocation; any renewals, extensions, substitutions, and modifications of the Indebtedness. This Guaranty shall bind Guarantor's estate as to the Indebtedness created both before and after Guarantor's death or incapacity, regardless of Lender's actual notice of Guarantor's death. Subject to the foregoing, Guarantor's executor or administrator or other legal representative may terminate this Guaranty in the same manner in which Guarantor might have terminated it and with the same effect. Release of any other guarantor or termination of any other guaranty of the Indebtedness shall not affect the liability of Guarantor under this Guaranty. A revocation Lender receives from any one or more Guarantors shall not affect the liability of any remaining Guarantors under this Guaranty. **It is anticipated that fluctuations may occur in the aggregate amount of the Indebtedness covered by this Guaranty, and Guarantor specifically acknowledges and agrees that reductions in the amount of the Indebtedness, even to zero dollars ($0.00), shall not constitute a termination of this Guaranty. This Guaranty is binding upon Guarantor and Guarantor's heirs, successors and assigns so long as any of the Indebtedness remains unpaid and even though the Indebtedness may from time to time be zero dollars ($0.00).**

**GUARANTOR'S AUTHORIZATION TO LENDER.** Guarantor authorizes Lender, either before or after any revocation hereof, **without notice or demand and without lessening Guarantor's liability under this Guaranty, from time to time:** (A) prior to revocation as set forth above, to make one or more additional secured or unsecured loans to Borrower, to lease equipment or other goods to Borrower, or otherwise to extend additional credit to Borrower; (B) to alter, compromise, renew, extend, accelerate, or otherwise change one or more times the time for payment or other terms of the Indebtedness or any part of the Indebtedness, including increases and decreases of the rate of interest on the Indebtedness; extensions may be repeated and may be for longer than the original loan term; (C) to take and hold security for the payment of this Guaranty or the Indebtedness, and exchange, enforce, waive, subordinate, fail or decide not to perfect, and release any such security, with or without the substitution of new collateral; (D) to release, substitute, agree not to sue, or deal with any one or more of Borrower's sureties, endorsers, or other guarantors on any terms or in any manner Lender may choose; (E) to determine how, when and what application of payments and credits shall be made on the Indebtedness; (F) to apply such security and direct the order or manner of sale thereof, including without limitation, any nonjudicial sale permitted by the terms of the controlling security agreement or deed of trust, as Lender in its discretion may determine; (G) to sell, transfer, assign or grant participations in all or any part of the Indebtedness; and (H) to assign or transfer this Guaranty in whole or in part.

Loan No: 41205212

# COMMERCIAL GUARANTY
## (Continued)

**GUARANTOR'S REPRESENTATIONS AND WARRANTIES.** Guarantor represents and warrants to Lender that (A) no representations or agreements of any kind have been made to Guarantor which would limit or qualify in any way the terms of this Guaranty; (B) this Guaranty is executed at Borrower's request and not at the request of Lender; (C) Guarantor has full power, right and authority to enter into this Guaranty; (D) the provisions of this Guaranty do not conflict with or result in a default under any agreement or other instrument binding upon Guarantor and do not result in a violation of any law, regulation, court decree or order applicable to Guarantor; (E) Guarantor has not and will not, without the prior written consent of Lender, sell, lease, assign, encumber, hypothecate, transfer, or otherwise dispose of all or substantially all of Guarantor's assets, or any interest therein; (F) upon Lender's request, Guarantor will provide to Lender financial and credit information in form acceptable to Lender, and all such financial information which currently has been, and all future financial information which will be provided to Lender is and will be true and correct in all material respects and fairly present Guarantor's financial condition as of the dates the financial information is provided; (G) no material adverse change has occurred in Guarantor's financial condition since the date of the most recent financial statements provided to Lender and no event has occurred which may materially adversely affect Guarantor's financial condition; (H) no litigation, claim, investigation, administrative proceeding or similar action (including those for unpaid taxes) against Guarantor is pending or threatened; (I) Lender has made no representation to Guarantor as to the creditworthiness of Borrower; and (J) Guarantor has established adequate means of obtaining from Borrower on a continuing basis information regarding Borrower's financial condition. Guarantor agrees to keep adequately informed from such means of any facts, events, or circumstances which might in any way affect Guarantor's risks under this Guaranty, and Guarantor further agrees that, absent a request for information, Lender shall have no obligation to disclose to Guarantor any information or documents acquired by Lender in the course of its relationship with Borrower.

**GUARANTOR'S FINANCIAL STATEMENTS.** Guarantor agrees to furnish Lender with the following:

**Annual Statements.** As soon as available, but in no event later than ninety (90) days after the end of each fiscal year, Guarantor's balance sheet and income statement for the year ended, prepared by Guarantor.

**Tax Returns.** As soon as available, but in no event later than ninety (90) days after the applicable filing date for the tax reporting period ended, Guarantor's Federal and other governmental tax returns, prepared by a certified public accountant satisfactory to Lender.

All financial reports required to be provided under this Guaranty shall be prepared in accordance with GAAP, applied on a consistent basis, and certified by Guarantor as being true and correct.

**GUARANTOR'S WAIVERS.** Except as prohibited by applicable law, Guarantor waives any right to require Lender (A) to continue lending money or to extend other credit to Borrower; (B) to make any presentment, protest, demand, or notice of any kind, including notice of any nonpayment of the Indebtedness or of any nonpayment related to any collateral, or notice of any action or nonaction on the part of Borrower, Lender, any surety, endorser, or other guarantor in connection with the Indebtedness or in connection with the creation of new or additional loans or obligations; (C) to resort for payment or to proceed directly or at once against any person, including Borrower or any other guarantor; (D) to proceed directly against or exhaust any collateral held by Lender from Borrower, any other guarantor, or any other person; (E) to pursue any other remedy within Lender's power; or (F) to commit any act or omission of any kind, or at any time, with respect to any matter whatsoever.

Guarantor also waives any and all rights or defenses based on suretyship or impairment of collateral including, but not limited to, any rights or defenses arising by reason of (A) any "one action" or "anti-deficiency" law or any other law which may prevent Lender from bringing any action, including a claim for deficiency, against Guarantor, before or after Lender's commencement or completion of any foreclosure action, either judicially or by exercise of a power of sale; (B) any election of remedies by Lender which destroys or otherwise adversely affects Guarantor's subrogation rights or Guarantor's rights to proceed against Borrower for reimbursement, including without limitation, any loss of rights Guarantor may suffer by reason of any law limiting, qualifying, or discharging the Indebtedness; (C) any disability or other defense of Borrower, of any other guarantor, or of any other person, or by reason of the cessation of Borrower's liability from any cause whatsoever, other than payment in full in legal tender, of the Indebtedness; (D) any right to claim discharge of the Indebtedness on the basis of unjustified impairment of any collateral for the Indebtedness; (E) any statute of limitations, if at any time any action or suit brought by Lender against Guarantor is commenced, there is outstanding Indebtedness which is not barred by any applicable statute of limitations; or (F) any defenses given to guarantors at law or in equity other than actual payment and performance of the Indebtedness. If payment is made by Borrower, whether voluntarily or otherwise, or by any third party, on the Indebtedness and thereafter Lender is forced to remit the amount of that payment to Borrower's trustee in bankruptcy or to any similar person under any federal or state bankruptcy law or law for the relief of debtors, the Indebtedness shall be considered unpaid for the purpose of the enforcement of this Guaranty.

Guarantor further waives and agrees not to assert or claim at any time any deductions to the amount guaranteed under this Guaranty for any claim of setoff, counterclaim, counter demand, recoupment or similar right, whether such claim, demand or right may be asserted by the Borrower, the Guarantor, or both.

**GUARANTOR'S UNDERSTANDING WITH RESPECT TO WAIVERS.** Guarantor warrants and agrees that each of the waivers set forth above is made with Guarantor's full knowledge of its significance and consequences and that, under the circumstances, the waivers are reasonable and not contrary to public policy or law. If any such waiver is determined to be contrary to any applicable law or public policy, such waiver shall be effective only to the extent permitted by law or public policy.

**SUBORDINATION OF BORROWER'S DEBTS TO GUARANTOR.** Guarantor agrees that the Indebtedness, whether now existing or hereafter created, shall be superior to any claim that Guarantor may now have or hereafter acquire against Borrower, whether or not Borrower becomes insolvent. Guarantor hereby expressly subordinates any claim Guarantor may have against Borrower, upon any account whatsoever, to any claim that Lender may now or hereafter have against Borrower. In the event of insolvency and consequent liquidation of the assets of Borrower, through bankruptcy, by an assignment for the benefit of creditors, by voluntary liquidation, or otherwise, the assets of Borrower applicable to the payment of the claims of both Lender and Guarantor shall be paid to Lender and shall be first applied by Lender to the Indebtedness. Guarantor does hereby assign to Lender all claims which it may have or acquire against Borrower or against any assignee or trustee in bankruptcy of Borrower; provided however, that such assignment shall be effective only for the purpose of assuring to Lender full payment in legal tender of the Indebtedness. If Lender so requests, any notes or credit agreements now or hereafter evidencing any debts or obligations of Borrower to Guarantor shall be marked with a legend that the same are subject to this Guaranty and shall be delivered to Lender. Guarantor agrees, and Lender is hereby authorized, in the name of Guarantor, from time to time to file financing statements and continuation statements and to execute documents and to take such other actions as Lender deems necessary or appropriate to perfect, preserve and enforce its rights under this Guaranty.

**MISCELLANEOUS PROVISIONS.** The following miscellaneous provisions are a part of this Guaranty:

**Amendments.** This Guaranty, together with any Related Documents, constitutes the entire understanding and agreement of the parties as to the matters set forth in this Guaranty. No alteration of or amendment to this Guaranty shall be effective unless given in writing and signed by the party or parties sought to be charged or bound by the alteration or amendment.

**Attorneys' Fees; Expenses.** Guarantor agrees to pay upon demand all of Lender's costs and expenses, including Lender's reasonable attorneys' fees and Lender's legal expenses, incurred in connection with the enforcement of this Guaranty. Lender may hire or pay

Exhibit C



U.S. DEPARTMENT OF THE TREASURY
BUREAU OF THE FISCAL SERVICE
WASHINGTON, DC 20227


ACTING ON BEHALF OF
U.S. SMALL BUSINESS ADMINISTRATION
CERTIFICATE OF INDEBTEDNESS


Great American Auction Service, Inc.
128 Cardinal Road
Hyde Park, NY 12538
**ATTN: Mary J Garlo Francese and/or Peter Francese**
**EIN:** ▮▮▮▮▮

Peter Francese
128 Cardinal Road
Hyde Park, NY 12538
**SSN:** ▮▮▮▮▮

**TRFM1600230660**

I hereby certify, as part of my duties with the U.S. Department of the Treasury (Treasury), including referring matters to the U.S. Department of Justice (DOJ) for litigation, I am a custodian of records of certain files sent by the U.S. Small Business Administration (SBA) to Treasury for collection actions. As a custodian of records for Treasury, I have care and custody of records relating to the debts owed by Great American Auction Service and Peter Francese (DEBTORS) to SBA.

On May 21, 2012, the DEBTORS executed a promissory note and unconditional guarantee loan agreement for $50,000.00, with interest accruing at a rate of 5.25%, except as otherwise provided within the Promissory Note with Rhinebeck Bank (LENDER). Pursuant to Section 7(a) of the Small Business Act as amended, the SBA guarantees 50% of this loan.

Thereafter, the LENDER disbursed a total of $50,000.00 of which the DEBTORS made payments totaling $9,914.17. The payments were applied, $5,829.44 to the principal and $4,084.73 to the interest and fees. The DEBTORS became delinquent on the obligation on March 1, 2014 with a balance due of $49,364.86, due to the delinquency the SBA had to pay the guaranteed 50% and became holder of the Note.

SBA referred the claim to Treasury's Bureau of the Fiscal Service, Debt Management Services (DMS) to collect the delinquent debt on July 6, 2016.

On September 6, 2019, DMS referred the claim to DOJ for litigation and collection in the amount due of $49,364.86 with daily interest of $7.10. Further, I certify that I am familiar with Treasury's record keeping practices, including the receipt of files from SBA. As of February 20, 2020, the DEBTORS are indebted to the United States in the amount stated as follows:

| | |
|---|---|
| Principal: | $ 49,364.86 |
| Interest (@5.25%): | $ 4,545.72 |
| Treasury and DOJ Fees: | $19,452.28 (pursuant to 31 U.S.C. 3717(e) |
| **Total:** | **$73,362.86** |

1



## U.S. DEPARTMENT OF THE TREASURY
### BUREAU OF THE FISCAL SERVICE
### WASHINGTON, DC 20227

### ACTING ON BEHALF OF
### U.S. SMALL BUSINESS ADMINISTRATION
### <u>CERTIFICATE OF INDEBTEDNESS</u>

The balances stated in the case listed above are current as of February 20, 2020, including any applicable interest, penalties, administrative fees, and DMS & DOJ fees (pursuant to 31 U.S.C. 3717(e) and 3711(g)(6), (7); 31 C.F.R. 285.12(j) and 31 C.F.R. 901.1(f); and 28 U.S.C. 527, note).

Pursuant to 28 U.S.C. § 1746(2), I certify under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief based upon information provided by SBA and information contained in Treasury's records.

Regina Crisafulli
Financial Program Specialist
U.S. Department of the Treasury
Bureau of the Fiscal Service

2